Amy Wilkins Hoffman (SBN 022762)
Hoffman Legal, LLC
99 E. Virginia Ave., Ste. 220
Phoenix, AZ 85004
Phone: (623) 565-8851
Email: ahoffman@hoffmanlegalaz.com

John F. Baughman, *admitted pro hac vice*
Adam Offenhartz, *admitted pro hac vice*
Allison Melton, *admitted pro hac vice*
Baughman Kroup Bosse PLLC
One Liberty Plaza – 46th Floor
New York, NY 10006
Phone: (212) 548-3212
Email:  jbaughman@bkbfirm.com
Email: aoffenhartz@bkbfirm.com
Email: amelton@bkbfirm.com

Attorneys for Plaintiff Nikola Corporation

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nikola Corporation, | Case No.: 2:24-cv-00690-DWL |
| Plaintiff, | **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | Oral Argument Requested |
| EMBR Motors, Inc.; Trevor R. Milton; M&M Residual, LLC; Cole Cannon; and David "Dave" Sparks, | |
| Defendant(s). | |

#698901v15

**TABLE OF CONTENTS**

I.    Introduction.................................................................................................................1

II.   Factual Background.....................................................................................................2

III.  Argument....................................................................................................................2

  A.   Standard for a Preliminary Injunction...................................................................2

  B.   Nikola is Likely to Succeed on the Merits.............................................................3

    1.   Nikola is Likely to Succeed on Its Breach of Contract Claim.....................3

    2.   Nikola is Likely to Succeed on Its Trademark Infringement Claims..........7

    3.   Nikola is Likely to Succeed on Its Securities Exchange Act Claims........10

  C.   Nikola Will Suffer Irreparable Harm Without a Preliminary Injunction.................12

  D.   The Balance of Hardships Favors Injunctive Relief..............................................14

  E.   Injunctive Relief Is in the Public Interest.............................................................15

IV.   Conclusion................................................................................................................16

Plaintiff's Motion for Preliminary Injunction

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Case(s)**

4

*AK Futures LLC v. Boyd St. Distro, LLC*,

5
    35 F.4th 682 (9th Cir. 2022)................................................................................ 13

6

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011)......................................................................... 2, 3

7

*AMF Inc. v. Sleekcraft Boats*,

8
    599 F.2d 341 (9th Cir. 1979).......................................................................... 9, 10

9

*Ariz. Dream Act Coal. v. Brewer*,

10
    757 F.3d 1053 (9th Cir. 2014)............................................................................ 13

11

*BakeMark USA LLC v. Pastis*,

12
    CV-23-02674-PHX-SMB, 2024 WL 810635 (D. Ariz. Feb. 27, 2024) ........................ 14

13

*Brookfield Communications, Inc. v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999)............................................................................. 9

14

*Compass Bank v. Hartley*,

15
    430 F. Supp. 2d 973 (D. Ariz. 2006)................................................................... 15

16

*CytoSport, Inc. v. Vital Pharms., Inc.*,

17
    617 F. Supp. 2d 1051 (E.D. Cal. 2009)............................................................... 16

18

*Desaigoudar v. Meyercord*,

19
    223 F.3d 1020 (9th Cir. 2000).................................................................... 10, 11

20

*eBay, Inc. v. Bidder's Edge, Inc.*,
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................................................. 14

21

*GoTo.com, Inc. v. Walt Disney Co.*,

22
    202 F.3d 1199 (9th Cir. 2000)............................................................................. 9

23

*Graham v. Asbury*,

24
    112 Ariz. 184 (1975) ..................................................................................... 3, 4

25

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,

26
    736 F.3d 1239 (9th Cir. 2013)........................................................................... 14

27

*Hutton v. McDaniel*,
    264 F. Supp. 3d 996 (D. Ariz. 2017)................................................................... 11

28

*Interstellar Starship Servs., Ltd. v. Epix Inc.*,
    184 F.3d 1107 (9th Cir. 1999) ............................................................... 8, 9

*Krauth v. Exec. Telecard, Ltd.*,
    890 F. Supp. 269 (S.D.N.Y. 1995) ..................................................... 14, 15

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
    148 F. Supp. 2d 1141 (D. Kan. 2001) ...................................................... 16

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
    658 F.3d 936 (9th Cir. 2011) ....................................................................... 8

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970) ................................................................................... 14

*Mind Medicine (Mindmed) Inc. v. Freeman*
    No. 23CV7875 (DLC), 2024 WL 729260 (S.D.N.Y. Feb. 22, 2024) ........... 11

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ......................................................... 7, 9, 10

*R Journey, LLC v. Kampgrounds of Am., Inc.*,
    No. CV 22-48-BLG-SPW, 2023 WL 2373352 (D. Mont. Mar. 6, 2023) ......... 9, 10

*Republic of the Philippines v. Marcos*,
    862 F.2d 1355 (9th Cir. 1988) .................................................................... 3

*Salomon Bros. Mun. Partners Fund, Inc. v. Thornton*,
    410 F. Supp. 2d 330 (S.D.N.Y. 2006) ....................................................... 15

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
    709 F.3d 1281 (9th Cir. 2013) ..................................................................... 3

*Soilworks, LLC v. Midwest Indus. Supply, Inc.*,
    575 F. Supp. 2d 1118 (D. Ariz. 2008) ........................................................ 7

*State 48 Recycling Inc. v. Janes*,
    No. CV-22-00767-PHX-GMS, 2022 WL 1689414 (D. Ariz. May 26, 2022) ........... 16

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ................................................................................... 11

*Wilson v. Great Am. Indus., Inc.*,
    855 F.2d 987 (2d Cir.1988) ....................................................................... 11

*Wininger v. SI Mgmt., L.P.*,
    33 F. Supp. 2d 838 (N.D. Cal. 1998) ......................................................... 14

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ......................................................................................... 2

*Xcentric Ventures, LLC v. Mediolex Ltd.*,
No. CV-12-130-PHX-SMM, 2014 WL 12672225 (D. Ariz. June 4, 2014),
*aff'd*, 653 F. App'x 540 (9th Cir. 2016) ........................................................ 10

## <u>Rules and Statutes</u>

15 U.S.C. § 78n(a) ............................................................................................ 11

15 U.S.C. § 1115(a) ............................................................................................ 7

15 U.S.C. § 1116(a) .......................................................................................... 13

17 C.F.R. § 240.14a–9(a) ................................................................................. 11

Del. Code Ann. tit. 8, § 211(c) .......................................................................... 2

Fed. R. Civ. P. 65(d)(2) ...................................................................................... 3

Plaintiff Nikola Corporation ("Nikola"), moves pursuant to Fed. R. Civ. P. 65 and this Court's equitable power for a preliminary injunction order enjoining Defendants EMBR Motors, Inc. ("EMBR"), Trevor R. Milton ("Milton"), M&M Residual, LLC, Cole Cannon ("Cannon"), David "Dave" Sparks ("Sparks") (collectively, the "Defendants") from (1) depriving Nikola of its contractual rights under the Asset Purchase Agreement (the "APA"), (2) infringing on Nikola's trademark rights and (3) violating the securities laws.  This application is based on the Verified Complaint and this Memorandum of Points and Authorities.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    Introduction

This Court has not one, but three, independent avenues by which it may grant a preliminary injunction against the Defendants and prevent further injury to Nikola.  Nikola has been irreparably harmed by (1) EMBR's breaches of the APA; by (2) Defendants' violation of federal trademark laws; and (3) based on the Defendants' violation of federal securities laws. Nikola can show that all of the requirements for preliminary injunctive relief—likelihood of success on the merits, irreparable harm, that the balance of hardships favors Nikola and that an injunction is in the public interest—as to each of these claims.  Injunctive relief will prevent further irreparable harm.  Nikola respectfully requests the Court grant this Motion and its accompanying Motion for Expedited Discovery.

1

## II. Factual Background

2

The factual background for this Motion is detailed in the Verified Complaint filed on

3

March 28, 2024 (the "Complaint").[1] (ECF No. 1.)  Nikola now addresses its arguments.

4

5

Nikola has not yet announced its annual stockholder meeting date, but the meeting is

6

imminent because Delaware law, where Nikola is incorporated, contemplates that an annual

7

meeting must be held within 13 months of the prior annual meeting.   Del. Code Ann. tit. 8, §

8

211(c).   Nikola's 2023 annual meeting commenced on June 7, 2023. *See* Nikola Corp.,

9

Preliminary Proxy Statement (Schedule 14A) (April 13, 2023).  Therefore, the 2024 annual

10

11

meeting is expected to occur on or before July 6, 2024.

12

## III. Argument

13

## A. Standard for a Preliminary Injunction

14

A preliminary injunction will be granted if the movant shows: (1) a likelihood of success

15

16

on the merits, (2) the possibility of irreparable harm if the relief is not granted, (3) the balance

17

of equities favors the movant, and (4) that an injunction is in the public interest.  *Winter v. Nat.*

18

*Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Courts use a "sliding scale" to evaluate these

19

elements, in which the four elements "are balanced, so that a stronger showing of one element

20

may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

21

22

1131 (9th Cir. 2011).

23

Moreover, even if a plaintiff can only show that there are "serious questions" going to

24

the merits—a lesser showing than a likelihood of success on the merits—a preliminary

25

26

_____

27

[1]  All terms used in the Complaint that are not otherwise defined retain the same meaning
given in the Complaint.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

injunction may still issue if the "balance of hardships tips sharply in the plaintiff's favor" and the other two *Winter* factors are satisfied. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (citation and internal quotation marks omitted). "Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (quotation omitted).

### B.  Nikola is Likely to Succeed on the Merits

Nikola has a likelihood of success on the merits or can show that serious questions exist. Nikola's Complaint asserts ten causes of action and is likely to succeed on all of them.  Nikola, for efficiency, hereby moves for injunctive relief on three causes of action: (1) the breach of contract claim in Count I, (2) the trademark infringement claim in Count VI and (3) the claims for violations of the Securities Exchange Act and 17 C.F.R. § 240.14a-9 ("SEC Rule 14a-9") in Count IX.  Each claim supports injunctive relief independently.  In addition, because these Defendants are "in active concert or participation" with each other, an injunction ordered against any one of them—including EMBR—should bind and constrain them all.  *See* Fed. R. Civ. P. 65(d)(2).

#### 1.  Nikola is Likely to Succeed on Its Breach of Contract Claim

In Count I, Nikola alleges that EMBR breached the APA.  To prevail on a breach of contract claim, a plaintiff need only show "the existence of the contract, its breach and the resulting damages." *Graham v. Asbury*, 112 Ariz. 184, 185 (1975) (citation omitted).  Nikola can prove all of these elements.

The APA is a valid, written contract between EMBR and Nikola.  *See* Compl. Ex. A., ECF No. 1-1.  EMBR has repeatedly and publicly breached the APA in at least two ways: by violating the Excluded Individual Clause (*Id.*, Ex. A § 5.5.) and the Trademark Clauses (*Id.*, Ex. A §§ 4.15(m), 5.6 and 6.2, as detailed in the Complaint.  *Id.* ¶¶ 115-16.  Either breach would be sufficient.

*First,* in the APA's Excluded Individual Clause, EMBR promised Nikola that "Trevor R. Milton is not, and will not for the Restricted Period be, involved, in any manner, directly or indirectly . . . with [EMBR] or the business of [EMBR] following the Closing."  *Id.*, Ex. A § 5.5.[2]  For clarity, the APA supplied specific examples of what type of activity was prohibited, including Milton "being connected in any manner with [EMBR] or the Purchased Assets."  *Id.*

EMBR has breached the Excluded Individual Clause by publicly connecting EMBR and the Purchased Assets with Milton.  For example, the Feb. 18 Video published by Sparks—a founder and COO of EMBR—used the announcement of EMBR's acquisition of the Purchased Assets from Nikola to draw public attention to Milton's claim that he is innocent despite his fraud convictions.  The Feb. 18 Video *also* uses EMBR's launch, the Purchased Assets and the APA deal with Nikola to draw public attention to the Milton-led campaign to take over Nikola's Board.  Thus the Feb. 18 Video publicly involves Milton with Nikola, EMBR and the Purchased Assets.  *Id*. ¶¶ 137-144.

---

[2]   The Restricted Period is defined in the APA as "a period from the Closing until at least twelve months after the date that neither [Nikola] nor any of its Affiliates has any equity or debt interest in the Purchaser."  Compl., Ex. A § 5.5.  Because EMBR is still indebted to Nikola, the Restricted Period is currently in effect and is not expected to end any time in the foreseeable future.

EMBR's public website, https://embrmotors.com/ (the "EMBR Website") under the header "About EMBR Motors", notes "Nikola Motors' founder <u>Trevor Milton</u> facing legal battles…." *Id.*., Ex. E (emphasis added).  It also incorporates by reference a February 18, 2024 TikTok video featuring Sparks in which Sparks shows off the Badger truck prototypes, mentions Milton by name, shows a photo of Milton and claims that even though Milton "was getting attacked from every angle, he stood firm on his promise of getting the Badger [truck] built."[3]  *Id.; see also* Compl. ¶ 168.   EMBR's *own website* thus ties itself and its products with Milton, in clear violation of the APA's Excluded Individual Clause.

*Second,* throughout the APA, EMBR agreed that "no right, express or implied, is granted by this Agreement to use in any manner any trade name or trademark of [Nikola]…in any connection with [EMBR's] Business or Purchased Assets."  *Id.*, Ex. A §§ 4.15(m), 5.6 and 6.2.  EMBR also agreed "not to use any trade name or trademark of [Nikola] in violation of the foregoing."  *Id.,* Ex. A § 5.6.  EMBR breached these APA Trademark Clauses numerous times.  For example, the Feb. 18 Video mentions Nikola by name *over fifty times,* including in the title of the video: "The Nikola Badger is REAL and I Own Them."  *Id.* ¶ 13.   Sparks also repeatedly calls the Badger truck the "Nikola Badger" thereby causing Nikola's trade name to unlawfully be used "in connection with [EMBR's] Business or Purchased Assets" contrary to the express terms of the APA.  *Id.* ¶ 151.  This has led to legitimate confusion.  For example, comments below the YouTube video reflect that viewers cannot tell if Sparks is working for Nikola or not

---

[3]   The title of the TikTok video is displayed on the EMBR Website, and text posted below the TikTok video has been copied and pasted onto EMBR's website (or vice versa).

and are confused about Nikola's level of involvement in EMBR and the Badger.  In those comments, Sparks acknowledges the confusion but makes no effort to correct it.  *Id.* ¶ 163.

The EMBR Website also tries to capitalize on Nikola's brand recognition and good will by stating under the header "About EMBR Motors" that "Nikola is Back under a new brand…." *Id.*, Ex. E.  This statement is false and misleading: Nikola never "went" anywhere and EMBR is not a "brand" of Nikola.  Text on EMBR's website also repeatedly refers to the Badger truck (one of the Purchased Assets) as the "Nikola Badger", which is not true and improperly suggests that it continues to be Nikola's product when it is not.  The EMBR Website even includes a photo of Sparks and Cannon standing in front of the name "Nikola" while Sparks wears a hat emblazoned with Nikola's logo.  These incidences of using Nikola's trade name, trademarks and logo without authorization to publicly promote EMBR and the Purchased Assets are undeniable breaches of the APA's Trademark Clauses.  *Id.* ¶¶ 166-73.

As to causation and damage, EMBR's repeated contractual breaches have *already* injured Nikola's reputation and goodwill.  As detailed in the Complaint, Nikola's management has made a concerted effort to distance itself from Milton to overcome the negative publicity and decline in goodwill and reputation that Milton caused Nikola to suffer.  Indeed, further separating Milton from Nikola was a key reason Nikola entered into the APA.  EMBR's contractual breaches have undermined those efforts, deprived Nikola of the benefit of the bargain and harmed Nikola's reputation and goodwill by publicly associating Nikola with Milton, a convicted felon.  Likewise, EMBR's breaches of the Trademark Clauses have also caused injury by creating confusion about Nikola's level of affiliation with Milton, EMBR and the Purchased Assets.  Moreover, the contracting parties agreed, *ex ante*, that any breach or

1    threatened breach of the APA by EMBR would injure Nikola and warrant injunctive relief.  *Id.*,

2    Ex. A § 8.4.  The APA, including this clause, should be enforced as written.  Nikola's contract

3    claim is likely to succeed.

4            **2.    Nikola is Likely to Succeed on Its Trademark Infringement Claims.**

5            Nikola also has a high likelihood of success on its claims related to the unlawful use of

6    Nikola's trademarks (Count VI).  The elements of a trademark infringement claim are (1) that

7    the plaintiff has a protected ownership interest in the subject mark(s), and (2) that the

8    defendant's use of the mark is likely to cause confusion, thereby infringing on the plaintiff's

9    rights.  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014).  These elements

10   can be easily demonstrated.

11           *First,* Nikola has a protected ownership interest in its trademarks.  Proffering a copy of

12   a trademark registration is generally sufficient to meet that burden.  *See* 15 U.S.C. § 1115(a);

13   *Pom Wonderful LLC*, 775 F.3d at 1124.  Nikola has done so in its Complaint, establishing the

14   first element.  *See* Compl. Ex. G., ECF No. 1-1.

15           *Second,* the use of Nikola's trade name and trademarks to promote EMBR, the

16   Purchased Assets and Milton's Proxy Contest is not only likely to mislead and cause confusion,

17   it has already done so.  *See Soilworks, LLC v. Midwest Indus. Supply, Inc.*, 575 F. Supp. 2d

18   1118, 1129 (D. Ariz. 2008) (explaining that trademark infringement occurs where similar marks

19   confuse customers about the source of the products or when the defendant uses the plaintiff's

20   mark to capture initial customer attention).

21           In the Ninth Circuit, there is a presumption of confusion that shifts the burden to the

22   other party where "intent to cause confusion is coupled with . . . a mark virtually identical to a

- 7 -

previously registered mark." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 945 (9th Cir. 2011) ("The late comer who deliberately copies the dress of his competitors already in the field . . .  raises a presumption that customers will be deceived." (citation omitted)).  This presumption applies here.  The marks being used by EMBR (and, by extension, Cannon and Sparks) are identical to Nikola's registered trademarks.  *Compare* Compl. Ex. G, *with id.* ¶ 172.

Intent to cause confusion, the second trigger for the presumption, also exists.  "Adopting a designation with knowledge of its trademark status permits a presumption of intent to deceive."  *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999). "In turn, intent to deceive is strong evidence of a likelihood of confusion." *Id.*

This was the case here: EMBR used Nikola's Marks despite expressly agreeing, in the APA, not to do so, placing EMBR (and Sparks and Cannon) on notice of Nikola's rights in its protected marks.  Compl., Ex. A §§ 4.15(m), 5.6 and 6.2.  Sparks also admits in the Feb. 18 Video that EMBR "did not purchase the rights to use obviously Nikola['s] corporate name" and that "we were no longer going to use the Nikola name that did not come with the purchase of the assets."  *Id.* Ex. F, ECF No. 1-1 at 203; *id.* ¶ 160.  The intent to sow confusion is further confirmed by the fact that, in the Feb. 18 Video's YouTube comments, Sparks (EMBR's COO) *acknowledges that confusion exists and makes no effort to remedy it*, but instead tries to capitalize on the confusion to lure the viewer into watching more videos.  *Id.* ¶ 163.[4]  The presumption of confusion should apply here.

---

[4]   Cannon, an attorney, was equally aware that "Nikola" should not be used to promote "EMBR" or the "Badger." Cannon claims that he told Sparks to "block all Nikola marks,"

1
2
3
4
5
6
7
8
9
10
11

Even if that presumption did not apply, confusion—both real and likely—can be readily shown.  In the Ninth Circuit, courts are directed to use the eight *Sleekcraft* factors for guidance in assessing the likelihood of consumer confusion.  *Pom Wonderful*, 775 F.3d at 1125 (9th Cir. 2014).  The eight *Sleekcraft* factors are: (1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion.  *Pom Wonderful LLC*, 775 F.3d at 1125; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

12
13
14
15
16
17
18
19
20
21
22
23
24
25

When considering trademarks used "in the context of the Web," the three most important factors are the so-called "internet trinity": (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the parties' simultaneous use of the Web as a marketing channel. *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir. 2000); *see Interstellar Starship Servs., Ltd.*, 304 F.3d 936, 942 (9th Cir. 2002)  If these three factors suggest confusion is likely then the remaining *Sleekcraft* factors must "weigh strongly" against a likelihood of confusion to avoid the finding of infringement.  *Id.*; *Brookfield Communications, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999); *see also R Journey, LLC v. Kampgrounds of Am., Inc.,* No. CV 22-48-BLG-SPW, 2023 WL 2373352, at *11 (D. Mont. Mar. 6, 2023) (finding a likelihood of confusion based on the "internet trinity" in part because comments posted on a website confirmed actual confusion between the plaintiff and defendant).

26
27
28

yet that did not happen and on the EMBR Website both men are posed in front of "Nikola" as Sparks wears a hat with Nikola's logo.  *Id.* ¶¶ 170-173.

Here, the "internet trinity" confirms that confusion is likely. *First,* as to the similarity of the marks, the marks are not just alike, but are the same. *Second,* as to relatedness, the goods and services are closely related because both EMBR and Nikola are in the business of developing, manufacturing, and selling zero-emission motor vehicles. Indeed, they are so close that the goods involved—the Purchased Assets—used to belong to Nikola, making the likelihood of confusion very high. *Third,* both Nikola and EMBR use the Internet and social media accounts, such as YouTube and company websites, for marketing purposes. *See Sleekcraft*, 599 F.2d at 353 ("Convergent marketing channels increase the likelihood of confusion.")[5]

### 3.   Nikola is Likely to Succeed on Its Securities Exchange Act Claims

In Count IX, Nikola alleges that Defendants have violated Section 14(a) of the Securities Exchange Act ("Exchange Act") and SEC Rule 14a-9 which "disallow the solicitation of a proxy by a statement that contains either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000); *see* 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a–9(a). "The question of materiality. . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor." *TSC Indus., Inc. v.*

---

[5] The remaining five *Sleekcraft* factors, which this Court has cautioned "are not well suited for analyzing the unauthorized use of a mark on the internet 'in a manner calculated "to capture initial consumer attention,'" further show a high likelihood of confusion or do not weigh strongly enough to overcome the "internet trinity" factors. *See Xcentric Ventures, LLC v. Mediolex Ltd.*, No. CV-12-130-PHX-SMM, 2014 WL 12672225, at *9 (D. Ariz. June 4, 2014), *aff'd*, 653 F. App'x 540 (9th Cir. 2016); *see also Pom Wonderful LLC*, 775 F.3d at 1125 (finding that "a plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them").

*Northway, Inc.*, 426 U.S. 438, 445 (1976).   A negligent misrepresentation is sufficient, so Nikola need not plead or prove scienter.   *See Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 995 (2d Cir.1988).

A claim exists under Section 14(a) when the plaintiff establishes that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1016 (D. Ariz. 2017).   For example, in *Mind Medicine (Mindmed) Inc. v. Freeman,* a company used Section 14(a) to sue a disgraced former executive who, after leaving the company, unsuccessfully launched a proxy fight to elect himself and his confederates to the company's board.   No. 23CV7875 (DLC), 2024 WL 729260, at *1 (S.D.N.Y. Feb. 22, 2024). The company alleged that the former executive's campaign relied on false and misleading statements and omissions, including as to why the company's stock price had decreased, his qualifications to be on the board (or lack thereof), and by overselling his current relationship with the company.   *Id.* at *2.   These allegations were sufficient to state a claim for injunctive relief.   *Id.* at *5.

The instant case also involves a disgraced former executive's board takeover attempt, and concerns similarly false and misleading statements and omissions.   For example, in their Proxy Solicitation Materials the Defendants:

- Falsely claimed that the M&M Nominees were "highly qualified" to steer a publicly traded company, even though they were not (i.e., no public company, cleantech, manufacturing, or finance experience), *see* Compl. ¶¶ 185-87, 192;

- Falsely claimed that their slate of directors were "independent" even though they are linked to Sparks, Cannon, and Milton, *id.*, ¶¶ 193-97; and

- Falsely states that the significant drop in Nikola's stock price after September 2020 was caused by current management rather than the September 10, 2020 Hindenburg Report portraying Milton as a pathological fraudster and the subsequent investigations and litigation that ensued (including criminal charges and a conviction against Milton), *id.*, ¶ 207.

The Proxy Solicitation Materials fail to disclose, among many other items, the following material facts:

- The $165 million Arbitration Award Milton owes Nikola, *see id.* ¶ 200;

- The Rolling Coal Lawsuit brought against Sparks, among others, *id.*, ¶¶ 201;

- The unpaid judgment against Sparks in the Rolling Coal Lawsuit, that the Tenth Circuit noted the "flagrant misconduct" of defendants, including Sparks, in an opinion and that Cannon represented Sparks in this lawsuit, *id.*, ¶¶ 68-69, 201;

- Sparks had incurred, as of August 20, 2020, approximately $331,000 in tax liens and penalties, *id.*, ¶¶ 71, 201;

- Sparks' current dire financial condition, both personal and business related, and his lack of success in running other businesses, *id.*, ¶¶ 72, 201;

- Cannon's duties as a lawyer to the M&M Nominees (including Sparks, whom Cannon represents in the Rolling Coal lawsuit) which are likely to conflict with duties a Board member would owe, *id.* ¶ 202;

- M&M Residual's recent sale or transfer of large quantities of Nikola stock, making it a far smaller stockholder of Nikola than it claims in the Proxy Soliciting Materials, *id.*, ¶ 206;

- That EMBR agreed not to be involved with Milton in any way in the APA, *id.* ¶¶ 8, 17, 115.

All of these misrepresentations and omissions demonstrate a high likelihood of success on the merits.

**C.     Nikola Will Suffer Irreparable Harm Without a Preliminary Injunction**

Nikola has shown that it is likely to succeed on the merits in its trademark infringement claims.  As a result, Nikola should be entitled to a presumption of irreparable harm.  *See* 15 U.S.C. § 1116(a); *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022). EMBR has also already agreed the circumstances of this case demonstrate irreparable harm by

agreeing that injunctive relief is appropriate for any breaches and threatened breaches of the APA.  Compl., Ex. A § 8.4.

To the extent the Court needs to go beyond the presumption arising under federal trademark law and the APA, irreparable harm—that is, "harm for which there is no adequate legal remedy, such as an award of damages"—can be readily shown by Nikola.  *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

Here, there is strong evidence that Nikola is experiencing damage to its reputation and its goodwill which will continue unless Defendants are enjoined.  For example, an article on Elecktrek.com speaks unfavorably about Nikola because of the Feb. 18 Video and Milton's Proxy Contest.  Compl. ¶ 216.  Comments posted to the Feb. 18 Video on YouTube and Instagram also evince a loss of control over business reputation and damage to goodwill.  *Id.* ¶¶ 161-63.  For example, one viewer of the Feb. 18 Video interpreted it as evidence that Nikola's share price was being improperly manipulated, which is highly damaging to Nikola.  *Id.* ¶¶ 161-62.  Others are confusing Nikola with EMBR which—especially in light of EMBR's role in the Milton Proxy Contest—damages Nikola's reputation.  *Id.* ¶ 163.  Sparks has promised that similar videos will be forthcoming.  *Id.* ¶ 141.  The reputational damage to Nikola which Defendants have caused would be extremely difficult to quantify, presenting a textbook case of irreparable harm for which injunctive relief should lie.

Courts also recognize that "evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm."  *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).  This type of injury is "neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief."

*eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000); *accord BakeMark USA LLC v. Pastis,* CV-23-02674-PHX-SMB, 2024 WL 810635, at \*\*4-5 (D. Ariz. Feb. 27, 2024) (finding irreparable harm and granting a preliminary injunction where the defendant was posting false and disparaging information online about a former employer).

The Defendants' false and misleading Proxy Solicitation Materials are depriving Nikola's stockholders of the right to cast a fully informed vote.  This presents a classic scenario for "irreparable harm" that warrants a preliminary injunctive relief.  "Depriving securities holders of the right to cast a fully informed vote constitutes irreparable injury." *Wininger v. SI Mgmt., L.P.*, 33 F. Supp. 2d 838, 848 (N.D. Cal. 1998).  As a result, courts frequently find irreparable harm where the use of false and misleading proxies will frustrate the free exercise of stockholders' voting rights.  *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 382-83 (1970) (explaining that "[u]se of a solicitation that is materially misleading is itself a violation of law" and that "injunctive relief" sought prior to a stockholder's meeting "would be available to remedy such a defect."); *Krauth v. Exec. Telecard, Ltd.,* 890 F. Supp. 269, 287-88 (S.D.N.Y. 1995).  It is likewise found "in situations when the company faces a possible change of control." *Salomon Bros. Mun. Partners Fund, Inc. v. Thornton*, 410 F. Supp. 2d 330, 332 (S.D.N.Y. 2006) (citation omitted).

### D.    The Balance of Hardships Favors Injunctive Relief

As noted above, Nikola and its stockholders will be irreparably harmed if the Defendants' unlawful activities continue unabated.  The hardship on Nikola has been and will be significant.  In contrast, if the Defendants are required to refrain from using Nikola's name to further their own interests, they will not suffer hardship.  To be sure, EMBR, Sparks and

Cannon have never had any legal right to use Nikola's trademarks.  Similarly, Defendants cannot use Milton in connection with EMBR or the Purchased Assets.  Preventing Defendants from exercising rights they never held is not a legitimate hardship.  And even though Milton and M&M Residual may have some right, as stockholders of Nikola, to nominate new directors to the Board, they had no right to violate securities laws, trademark laws and the APA in the process.  The balance of hardships favors Nikola.

### E.       Injunctive Relief Is in the Public Interest

"Courts have held that the public interest is served by protecting a company's right to proprietary information, business operations, and contractual rights."  *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006).  Nikola had contractual rights, memorialized in the APA, to (1) not have EMBR or the Purchased Assets be associated with Milton and (2) to not have its name and trademarks be used by without authorization.  That Defendants may publish more public statements on social media or in SEC filings while this litigation is pending is a continuing threat to Nikola's rights.  It is in the public's interest to uphold these contractual obligations.

The law also recognizes a public interest in protecting intellectual property rights and "avoiding confusion in the marketplace."  *State 48 Recycling Inc. v. Janes*, No. CV-22-00767-PHX-GMS, 2022 WL 1689414, at *9 (D. Ariz. May 26, 2022) (quotation omitted); *see also CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) (finding that trademark law implicates "the right of the public to be free of confusion") (citation omitted).  There is likewise a public interest in full and informed shareholder votes: this interest will not be served if Defendants are not enjoined.  *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148

F. Supp. 2d 1141, 1150 (D. Kan. 2001) ("[A]ssuming the existence of materially misleading information, a full disclosure of such information, prior to any vote based thereon, will best serve the shareholding public.")

## IV.      Conclusion

For the foregoing reasons, Nikola respectfully requests that the Court grant Nikola's Motion for a Preliminary Injunction and enter a preliminary injunction order applicable during the pendency of this action against the Defendants, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them which:

1. Orders Defendants to immediately remove all existing public-facing references to Nikola on the EMBR Website and any social media accounts controlled by the Defendants (including but not limited to YouTube, Facebook, Instagram, TikTok, LinkedIn, and X);

2. Prohibits Defendants from using Nikola's trade dress, trademarks, or any false or misleading description of fact or representation of fact, or otherwise making any statement in commercial advertising or promotion which misrepresents the nature, characteristics, or qualities of Defendants' goods or services or Nikola's involvement with those goods or services;

3. Prohibits EMBR from mentioning, whether express or implied, Milton, M&M Residual and its officers, directors, affiliates and agents in any public-facing communications;

4. Prohibit Defendants from representing, in any manner or method, that any goods, services or business sold by Defendants are sponsored, approved, or authorized by or originating from Nikola, or from taking any action likely to cause confusion, mistake, or deception as to the nature, characteristics, approval, sponsorship or certification of those goods or services;

5. Prohibits all continued and future use, copying, distribution, publication, development, or deployment of Nikola's trade name(s) and trademarks;

6. Prohibits Sparks and Cannon from being nominated as directors in the Milton Proxy Contest or participating in the Milton Proxy Contest in any other way;

7. Prohibits any reference to EMBR, Sparks, or Cannon in any subsequent statements relating to the February 20, 2024 Soliciting Materials or any subsequent proxy solicitation; and

8. Prohibits the Defendants from engaging in conduct that violates the Exchange Act, the rules and regulations promulgated thereunder, and/or Section 3.2 of the Nikola Bylaws.

Nikola further requests that the Court grant any further relief it considers just and proper.

DATED: April 1, 2024

HOFFMAN LEGAL, LLC

By   /s/ Amy Wilkins Hoffman
Amy Wilkins Hoffman (SBN 022762)
99 E. Virginia Ave., Ste. 220
Phoenix, AZ 85004
Phone: (623) 565-8851
Email: ahoffman@hoffmanlegalaz.com

BAUGHMAN KROUP BOSSE PLLC

John F. Baughman, *admitted pro hac vice*
Adam Offenhartz, *admitted pro hac vice*
One Liberty Plaza –46th Floor
New York, NY 10006
Phone: (212) 548-3212
Email:  jbaughman@bkbfirm.com
Email: aoffenhartz@bkbfirm.com

Allison Melton*, admitted pro hac vice*
500 E. Main Street, Suite 1400
Norfolk, VA 23510
Phone: (757) 266-5585
Email: amelton@bkbfirm.com

*Attorneys for Nikola Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal to registered CMF participants.

In addition, I mailed the attached to:

> Trevor Milton
> 13808 S. Canyon Dr.
> Phoenix, AZ  85048
> Defendant

> Cole Cannon
> 3750 E. Indian Wells Dr.
> Queen Creek, AZ  85142
> Defendant

> M&M Residual, LLC
> c/o Troy A. Wallin, Registered Agent
> 10781 W. Twain Ave.
> Las Vegas, NV  89135
> Defendant

> EMBR Motors, Inc.
> c/o Cogency Global, Inc.
> 850 New Burton Road
> Dover, DE  19904
> Defendant

I caused the attached to be served via process server, certified mail, and by Federal Express on:

> David "Dave" Sparks
> 3315 Sunset Loop Road
> Bountiful, UT  84010
> Defendant

Dated: April 1, 2024                    By: /s/ Amy Wilkins Hoffman
                                            Amy Wilkins Hoffman

- 18 -